**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UBELINO SALINAS-IBARRA, | Case No. 17-cv-01137-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| JAMIE ELLIS, | [Re: ECF 26] |
| Defendant. | |

Plaintiff Ubelino Salinas-Ibarra ("Mr. Salinas-Ibarra") brings this action under 42 U.S.C. § 1983 against Santa Clara Police Officer Jamie Ellis ("Officer Ellis") arising from an incident at Mr. Salinas-Ibarra's residence in the early morning hours of March 7, 2015. *See generally* Amended Compl., ECF 8. Mr. Salinas-Ibarra claims that his Fourth Amendment rights were violated when Officer Ellis wrongfully detained, arrested, and used excessive force against him when police responded to a 911 call regarding Mr. Salinas-Ibarra's son, Johnathon.

Officer Ellis moves for summary judgment on all claims. *See generally* Motion for Summary Judgment, ECF 26 ("Mot."). The Court has considered the briefing, admissible evidence, applicable law, as well as the oral argument presented at the hearing held on February 15, 2018. For the reasons that follow, Officer Ellis' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

# I.     BACKGROUND[1]

At all relevant times, Officer Jamie Ellis served as a police officer for the City of Santa Clara.  *See* Declaration of Jamie Ellis ("Ellis Decl.") ¶ 1, ECF 26-7.  At approximately 12:40 A.M. on March 7, 2015, Officer Ellis responded to a call at Mr. Salinas-Ibarra's residence in Santa Clara.  *Id*. ¶ 2.  Officer Ellis testified that she heard the communications dispatcher describe the incident as a "415…weapons," which refers to the California Penal Code governing fights and disturbances.  *Id*.  The dispatcher informed Officer Ellis that a family member at the residence was high on acid, and was threatening another family member with a baseball bat.  *Id*.  The dispatcher identified the suspect with the bat as Johnathon Salinas, describing him as a man in his twenties, wearing a red sweater.  *See* Declaration of Ralph Robles Jr. ("Robles Decl.") Exh. B, ECF 27-3 ("Ellis Depo.") 18:18-23.  Johnathon Salinas is the son of Mr. Salinas-Ibarra.  Ellis Decl. ¶ 2.

Mr. Salinas-Ibarra was forty-one (41) years old at the time of the March 7, 2015 incident. Robles Decl. Exh. A, ECF 27-2 ("Salinas-Ibarra Depo.") at 7:14.  Mr. Salinas-Ibarra testified that he was asleep during the "family argument," and only woke up when he heard the police outside speaking loudly into a microphone.  *Id*. at 14:6-25.  At that point, Officer Ellis had arrived at the residence with several other Santa Clara Police Department Officers, including Sergeant Johanna Green.  Ellis Decl. ¶ 3.  Officer Ellis recalled a male, later identified as Mr. Salinas-Ibarra, coming to the front window of the residence and having a brief conversation with Sergeant Green, who is Spanish-speaking.  *Id*.  Officer Ellis understood that Sergeant Green had told Mr. Salinas-Ibarra to come out of the house but that he had refused, shut the window, and walked away.  *Id*.

Officer Ellis testified that both she and Sergeant Green then made amplified announcements to the occupants of the residence, in both Spanish and English, telling the residents to come outside with their hands up.  *Id*. ¶ 4.  Mr. Salinas-Ibarra was the first to exit the residence, and he was detained in handcuffs by Officer Patricia Bowers.  *Id*.  Mr. Salinas-Ibarra testified that he did not understand why he was being handcuffed, and that up until the point of handcuffing the officers only spoke to him English and they "didn't understand Spanish." Salinas-

---

[1] The facts set forth in this section are undisputed unless otherwise noted.

Ibarra Depo. 34:2-15.  Mr. Salinas-Ibarra is Spanish-speaking and does not speak English.  *Id*. 37:23-25.  Meanwhile, other occupants exited the residence.  Ellis Decl. ¶ 4.

Once Officer Bowers detained him in handcuffs, Mr. Salinas-Ibarra verbally identified himself to the police.  *See* Robles Decl. Exh. C at 2 ("3/7/2015 Police Report").  Officer Jason D'Amico then walked Mr. Salinas-Ibarra—still in handcuffs—to the opposite side of the street from the residence, where Officer Ellis was positioned near the curb.  *Id*.; *see also* Ellis Decl. ¶ 5. Officer D'Amico asked Officer Ellis to stay with Mr. Salinas-Ibarra "until the situation was sorted out."  *Id*.  Officer Ellis testified that Mr. Salinas-Ibarra was wearing a dark-colored flannel robe with no shoes, and he appeared to be in his late thirties or forties.  *See* Ellis Depo. 25:2-9; 27:1-4.

The events that followed are in dispute.  Officer Ellis testified that Mr. Salinas-Ibarra was "boisterous" and "rowdy," and she had to ask him to be quiet several times.  Ellis Decl. ¶ 5. Although Officer Ellis testified that she and Officer D'Amico assisted Mr. Salinas-Ibarra into a seated position on the curb, Mr. Salinas-Ibarra kept standing up and had to be told to sit down at least three times.  *Id*.  Officer Ellis testified that she specifically told Mr. Salinas-Ibarra to sit down in Spanish.  *Id*.  In contrast, Mr. Salinas-Ibarra testified that all instructions were given to him in English and he only understood that Officer Ellis wanted him to sit because "she was pushing me down."  *See* Salinas-Ibarra Depo. 37:1-4, 11-25.  Mr. Salinas-Ibarra also testified that he never attempted to stand up after the officers put him into a seated position.  *Id*. 49:15-50:2.  He then immediately clarified that he did try to get up when Johnathon exited the residence but he was unable to.  *Id*. 50:3-10.  Accordingly, there are factual disputes as to whether Officer Ellis gave instructions to Mr. Salinas-Ibarra in English or in Spanish, and whether Mr. Salinas-Ibarra understood the instructions given to him and complied with them.

Mr. Salinas-Ibarra testified that before Johnathon Salinas ever exited the house, Officer Ellis "started to apply pressure" to his shoulders to get Mr. Salinas-Ibarra to sit down while he was standing on asphalt.  *Id*. 37:17-20; 43:3-10.  Mr. Salinas-Ibarra testified that he "never resisted" and went into a seated position in response to the pressure.  *Id*. 43:11-15.  He explains that while he was seated, his feet were in a position such that his toes were on the ground and his feet were higher up on the sidewalk.  *Id*. 44:3-7.  Mr. Salinas-Ibarra testified that when Officer Ellis was

1    sitting him down on the curb, she smashed his foot with her own. *Id*. 46:11-17. He felt pain

2    immediately, stating that he felt the impact in his pinky toe. *Id*. 47:8-12.[2]

3         While Mr. Salinas-Ibarra was stationed at the curb in handcuffs next to Officer Ellis, and

4    after he alleges she had stomped on his foot, Johnathon Salinas exited the residence. *See* Salinas-

5    Ibarra Depo. 48:17-20; Ellis Decl. ¶ 6. Johnathon began yelling at the officers on the scene. Ellis

6    Decl. ¶ 6. Officer Ellis testified that Mr. Salinas-Ibarra then yelled in Spanish to his son,

7    Johnathon, including yelling at him to calm down. *Id*.; *see also* Ellis Depo. 28:6-8. According to

8    Officer Ellis, Johnathon Salinas did not calm down but actually became louder and louder with the

9    officers on the scene. *See* Ellis Decl. ¶ 7. Officer Ellis further testified that at that point, Mr.

10   Salinas-Ibarra stood up for "at least the fourth time," and started walking forward toward his wife

11   and Sergeant Green. *Id*. Meanwhile, Johnathon continued to scream, and Mr. Salinas-Ibarra

12   seemed to be attempting to walk forward into a position where he could see his son. *Id*. Officer

13   Ellis was concerned that Mr. Salinas-Ibarra would attempt to communicate with Johnathon, which

14   could increase Johnathon's agitation and resistance to the officers engaged with him. *Id*.

15        In contrast, Mr. Salinas-Ibarra testified that he never stood up when Johnathon exited the

16   residence because he "could not get up," and he also never attempted to walk forward toward any

17   of his family members. *See* Salinas-Ibarra Depo. 50:6-7; 60:3-5. According to Mr. Salinas-Ibarra,

18   he could not communicate with Johnathon when he came outside, and he did not try to yell

19   anything at Johnathon. *Id*. 60:14-22. Mr. Salinas-Ibarra does admit that he *tried* to get up to see

20   what was happening because he believed the police were hitting his son. *Id*. 49:2-10; 50:8-10.

21   However, Mr. Salinas-Ibarra was not able to stand up to see what was going on with Johnathon

22   because his foot was hurting and broken from Officer Ellis' stomp. *Id*.

23        Officer Ellis, who testified that Mr. Salinas-Ibarra stood up and was attempting to walk

24   forward, recalls that she placed her left hand on the back of Mr. Salinas-Ibarra's left shoulder and

25   told him to sit down. *See* Ellis Decl. ¶ 7. When he refused to comply, Officer Ellis grabbed the

26

27   ─────────────
     [2] The Court notes that although Mr. Salinas-Ibarra describes his injury as a "broken foot," Officer
28   Ellis represents that Mr. Salinas-Ibarra sustained a fracture of one of the bones in his pinky toe.
     *Compare* Salinas-Ibarra Depo. at 13:3 *with* Reply at 4, ECF 28.

large flannel robe he was wearing to pull him down, which he resisted. *Id.* Because Mr. Salinas-Ibarra refused to sit down again, Officer Ellis placed both of her hands on his shoulders and pulled him backward toward the curb, but he tensed up and refused to move. *Id.* ¶ 8. As she pulled him backwards by his robe, she stepped up onto the curb to gain leverage. *Id.* When Mr. Salinas-Ibarra continued to refuse her commands to sit down—which Officer Ellis testified she gave to him in Spanish—Officer Ellis pushed down on his shoulders and simultaneously kicked the back of his knee so that his leg would fold and force him back into a seated position. *Id.* ¶ 9. Officer Ellis did not give Mr. Salinas-Ibarra a warning before she made physical contact with him because she did not feel that it was feasible since she had to move quickly. *See* Ellis Depo. 34:10-21.

Officer Ellis arrested Mr. Salinas-Ibarra for a violation of California Penal Code § 148(a)(1), due to his behavior resisting and delaying a police officer and not complying with multiple orders to be seated on the curb. Ellis Decl. ¶ 10. Mr. Salinas-Ibarra does not believe that he resisted arrest. *See* Salinas-Ibarra Depo. 77:18-21. After he left the police station, Mr. Salinas-Ibarra went to Valley Medical Center where he found out that his foot was broken. *Id.* 13:3-5; 63:2-5. The Santa Clara County District Attorney's Office prosecuted Mr. Salinas-Ibarra for the § 148(a)(1) charge. *See* Request for Judicial Notice ("RJN"), Exh. A ("Misdemeanor Complaint"), ECF 26-2. Mr. Salinas-Ibarra subsequently performed twenty (20) hours of community service, and the District Attorney's Office dismissed the criminal complaint against him on February 9, 2016. RJN Exh. B ("2/9/2016 Minute Order").

On March 6, 2017, Mr. Salinas-Ibarra brought this action against Officer Ellis, seeking to hold her accountable for violations of Mr. Salinas-Ibarra's constitutional rights. *See* ECF 1.[3] Specifically, Mr. Salinas-Ibarra alleges that Officer Ellis deprived him of the right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment. The First Cause of Action ("COA") encompasses a claim for wrongful detention and wrongful arrest. *See* Amended Compl. ¶¶ 36-40 (First COA). Mr. Salinas-Ibarra also alleges a Fourth Amendment violation for excessive force. *Id.* ¶¶ 41-44 (Second COA).

---

[3] Salinas-Ibarra then filed an Amended Complaint as of right on April 13, 2017. *See* ECF 8. Officer Ellis answered the Amended Complaint on May 11, 2017. *See* ECF 9.

**II.   LEGAL STANDARD**

    **A.   Summary Judgment**

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.* at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. However, "the 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

    **B.   Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability for civil

damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss,* 134 S.Ct. 2056, 2066–67 (2014) (quoting *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2080 (2011)). "[T]he Supreme Court has 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)). Under the applicable pleading standard, the plaintiff must allege facts sufficient to make out a plausible claim that it would have been clear to the defendant officer that his conduct was unlawful in the situation he confronted. *Id.* at 2067. "Because qualified immunity is an affirmative defense from suit, not merely from liability, '[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Doe By and Through Doe v. Petaluma City School Dist.,* 54 F.3d 1447, 1449–50 (9th Cir. 1995) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court set forth a two-part approach for analyzing qualified immunity. The analysis contains both a constitutional inquiry and an immunity inquiry. *Johnson v. County of Los Angeles,* 340 F.3d 787, 791 (9th Cir. 2003). The constitutional inquiry requires the court to determine this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201. If the Court determines that a constitutional violation could be made out based on the parties' submissions, the second step is to determine whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The Supreme Court has clarified that the *sequence* of analysis set forth in *Saucier* is not mandatory and that a court may exercise its sound discretion in determining which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan,* 555 U.S. 223, 241-42 (2009). Thus, in some cases, it may be unnecessary to reach the ultimate constitutional question when officers would be entitled to qualified immunity in any event, a result consistent

with longstanding principles of judicial restraint.

The Supreme Court recently reiterated the longstanding principle that a "clearly established" constitutional right "should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Rather, it must be "particularized" to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Defining the right at too high a level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Ricard*, 134 S.Ct. 2012, 2023 (2014). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "A right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013). "The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." *Id.*

## III. REQUEST FOR JUDICIAL NOTICE

In support of her motion for summary judgment, Officer Ellis requests judicial notice of two documents: (1) a misdemeanor complaint in the criminal case against Mr. Salinas-Ibarra, *People v. Salinas, et al.*, Case No. C1508306, and (2) a Court Minute Order from February 9, 2016 dismissing the criminal complaint against Mr. Salinas-Ibarra. *See* RJN Exhs. A, B. Mr. Salinas-Ibarra does not oppose the request, and also relies on these documents in his opposition. *See* Opp'n at 7.

Documents that are part of the public record may be judicially noticed to show that a judicial proceeding occurred or that a document was filed in another court case, but a court may not take judicial notice of findings of facts from another case. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n. 5 (9th Cir. 2003); *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001).

Nor may the court take judicial notice of any matter that is in dispute. *Lee*, 250 F.3d at 689–90. Because these documents are public records, the Court GRANTS Officer Ellis' request for judicial notice as to the existence of the misdemeanor complaint, and its dismissal, against Mr. Salinas-Ibarra. *See* Fed. R. Evid. 201(b).

## IV. DISCUSSION

### A. Wrongful Detention and Arrest

Officer Ellis moves for summary judgment on Mr. Salinas-Ibarra's First COA for wrongful detention and arrest in violation of the Fourth Amendment. *See* Mot. at 6-9. Specifically, Officer Ellis argues that she is entitled to qualified immunity because she did not initiate the detention or apply the handcuffs to Mr. Salinas-Ibarra, and she had probable cause to arrest him for a violation of California Penal Code § 148(a)(1). Even if her actions amounted to a constitutional violation, Officer Ellis argues that the law was not clearly established such that her conduct was plainly incompetent. Officer Ellis further argues that the unlawful arrest claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Mr. Salinas-Ibarra's "criminal conviction" arising out of the same facts is fundamentally inconsistent with the unlawful behavior for which he seeks damages under § 1983. Mot. at 8-9. The Court addresses each argument in turn.

#### 1. Wrongful Detention

The Fourth Amendment "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878 (1975); *see also United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000). Accordingly, the Fourth Amendment requires that such seizures be, at a minimum, "reasonable." *Id.* Pursuant to the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968), the police may conduct "a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that justifies their actions." *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002).

The reasonable suspicion standard applied to investigatory stops is "a less demanding standard than probable cause," and merely requires "a minimal level of objective justification." *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000). However, like the probable cause determination,

the reasonable suspicion analysis is a "fluid concept" that is not "readily, or even usefully, reduced to a neat set of legal rules." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).  In determining whether officers had reasonable suspicion to justify a brief seizure, courts must "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 273 (2002).  This approach allows officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available" to them.  *Id.*  Nonetheless, an officer may not rely upon a mere hunch to justify an investigatory stop.  *Id.* at 274.  Rather, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Officer Ellis argues that she is shielded by qualified immunity on the wrongful detention claim because she reasonably relied in good faith on the detaining officers' determination of reasonable suspicion.  *See* Mot. at 6.  She also argues that summary judgment is appropriate because the undisputed facts show that the detaining officers had reasonable suspicion to support the detention.  *Id*. at 7.  For the reasons that follow, the Court finds both arguments persuasive and GRANTS Officer Ellis' motion for summary judgment as to the claim for wrongful detention.

### i.      Reasonable Reliance on Facially Valid Direction

In this case, it is undisputed that Officer Ellis did not make the decision to detain Mr. Salinas-Ibarra and she did not apply the handcuffs.  *See* Ellis Decl. ¶ 4.  The parties agree that Officer Ellis had the right to rely on the detaining officer's determination of reasonable suspicion.  *See* Mot. at 6; Opp'n at 16-17.  ("Defendant is correct that a facially valid direction from one officer to another to stop a person or a vehicle insulates the complying officer from assuming personal responsibility or liability for his act done in obedience to the direction.")  Here, Officer Ellis relied on a facially valid direction from the officers who detained and escorted Mr. Salinas-Ibarra to her and asked her to keep an eye on him.  To carry her burden on summary judgment, Officer Ellis has presented evidence that after Mr. Salinas-Ibarra was handcuffed by Officer

Bowers, Officer Jason D'Amico walked Mr. Salinas-Ibarra to the curb where Officer Ellis was standing and asked her to stay with Mr. Salinas-Ibarra "until the situation was sorted out." Ellis Decl. ¶ 5. Accordingly, Officer Ellis argues that she cannot be liable for her reasonable, good faith belief that Mr. Salinas-Ibarra's initial detention was valid. Mot. at 7.

Officer Ellis points to *United States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976) for the proposition that an officer relying on facially valid direction from another officer insulates the complying officer from assuming personal responsibility or liability for his act done in obedience to the direction. *See* Mot. at 6. In *Robinson*, a police officer made a traffic stop based solely on the receipt of a radio dispatch to stop the described vehicle. 536 F.2d at 1299. In the context of a criminal motion to suppress, the Ninth Circuit held that reasonable suspicion to detain did not arise solely from the dispatcher relaying the information to a fellow officer, but required proof of the factual foundation for the relayed message. *Id*. at 1299. However, the Ninth Circuit described facts similar to those presented here, and held that the stopping officer would not face *personal* liability even if there was no foundation for the detention: "A facially valid direction from one officer to another to stop a person or a vehicle insulates the complying officer from assuming personal responsibility or liability for his act done in obedience to the direction. But the direction does not itself supply legal cause for the detention, any more than the fact of detention supplies its own justification." *Id*. The Ninth Circuit recognized "that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *Id*. at 1299-1300.

A similar line of authority holds that an officer may rely on the work of another law enforcement officer to establish probable cause. *See United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) ("The accepted practice of modern law enforcement is that an officer often makes arrests at the direction of another law enforcement officer even though the arresting officer himself lacks actual, personal knowledge of the facts supporting probable cause."). In addition, police officers have been granted qualified immunity for arrests based on recalled warrants, even where the arrestee provided the arresting officers with notice of the recall, because the officers

1   reasonably relied upon information from official warrant tracking services that later turned out to

2   be inaccurate.  *See*, *e.g.*, *Duckett v. City of Cedar Park,* 950 F.2d 272, 280 (5th Cir. 1992)

3   (concluding that police officer acted reasonably where officer confirmed the validity of a since-

4   recalled warrant through official channels); *Mitchell v. Aluisi*, 872 F.2d 577, 578–79 (4th Cir.

5   1989) (concluding that arrest based on facially valid warrant did not violate due process, where

6   sheriff's office had not received notice that the warrant had been cancelled).

7        So long as Officer Ellis had a reasonable, good faith belief that she was acting pursuant to

8   valid authority from the other officers on the scene, the Court agrees that she is immune from suit.

9   Mot. at 6 (citing *U.S. v. Hensley*, 469 U.S. 221, 232 (1985)) ("Assuming the police make

10  a *Terry* stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the

11  course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a

12  reasonable suspicion justifying a stop.") (citing *Robinson*, 536 F.2d 1298).

13       Mr. Salinas-Ibarra agrees with the authority discussed above, but argues that it is disputed

14  whether Officer Ellis had a reasonable, good faith belief that his detention was valid.  Opp'n at 17.

15  Mr. Salinas-Ibarra's only argument is that because he did not match the description of Johnathon

16  Salinas given to the officers by the dispatcher, it was not reasonable for Officer Ellis to suspect

17  him of criminal activity or rely on the other officers' reasonable suspicion determination.  *Id*.  Mr.

18  Salinas-Ibarra also distinguishes the cases on which Officer Ellis relies, such as *Hensley*, because

19  Officer Ellis was present at the scene and could make her own determination of reasonable

20  suspicion to detain Mr. Salinas-Ibarra.  *Id*. 17-18.  Mr. Salinas-Ibarra's argument against qualified

21  immunity is unpersuasive.  There is undisputed evidence that Officer Ellis responded to a weapons

22  call at a residence and encountered an active situation where occupants were leaving the house and

23  the police were trying to get a handle on a potentially dangerous situation where a suspect was

24  high on acid and wielding a baseball bat.  Officer Ellis believed Mr. Salinas-Ibarra's detention was

25  valid given the violent behavior that had been reported and the possibility that Mr. Salinas-Ibarra

26  had been involved in the incident, in particular because he had refused Sergeant Green's

27  instructions to come out of the house when the police first arrived.  Ellis Decl. ¶¶ 3-4.

28       Officer Ellis has met her initial burden on summary judgment, and Mr. Salinas-Ibarra has

not carried his burden to produce evidence to show a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. The undisputed facts show that Officer Ellis' reliance on the facially valid direction of Officer D'Amico was reasonable, and even if her reliance was unreasonable, Mr. Salinas-Ibarra has not even attempted to show that her actions violated clearly established law. *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") On Mr. Salinas-Ibarra's version of the facts, it would not have been clear to a reasonable officer on the scene that the detention was invalid solely because Mr. Salinas-Ibarra did not match the description of one of the suspects from dispatch. In other words, controlling federal law does not "clearly establish" that officers cannot handcuff a person who previously refused a police directive to leave a residence where a violent incident has been reported and the officers are securing the scene, simply because the person does not match the description provided by the 911 dispatcher. Mr. Salinas-Ibarra fails to "identify a case" to alert Officer Ellis that her conduct was unlawful, and qualified immunity applies. *See Sharp v. County of Orange*, No. 15-56146, 2017 WL 4126947, at *7 (9th Cir. Sept. 19, 2017) (quoting *White v. Pauly*, 137 S.Ct. at 552).

### ii.    Reasonable Suspicion

Officer Ellis also cannot be liable because the Court finds that it is undisputed that Officers Bowers and D'Amico had reasonable suspicion to conduct an investigatory detention to determine Mr. Salinas-Ibarra's involvement in the events. *See Gallegos*, 308 F.3d at 990. Mr. Salinas-Ibarra does not dispute Officer Ellis' observation that he came to the front window of the residence and initially refused to exit after Sergeant Green asked him, in Spanish, to come out of the house. *See generally* Opp'n; Ellis Decl. ¶ 3. Officer Ellis testified that as soon as Mr. Salinas-Ibarra left the residence, he was detained in handcuffs by Officer Bowers due to his possible involvement in the violent incident which had been reported and was still unfolding. *Id.* In his opposition, Mr. Salinas-Ibarra argues that there is a factual dispute with respect to whether he was legally detained because the dispatcher told the police that the suspect with the baseball bat, Johnathon Salinas, was in his twenties and wearing a red sweater. *See* Ellis Depo. 18:12-23. Mr. Salinas-Ibarra did

13

not match this description, and he immediately identified himself to police as Ubelino Salinas. *See* Ellis Depo. 27:1-4; Police Report at 2.

The problem with Mr. Salinas-Ibarra's argument is that he was not detained as a suspect from the 911 call. Rather, it is undisputed that he refused a police order to exit the house so that the police could continue their investigation of the suspect without endangering others. *See* Ellis Decl. ¶ 3. Mr. Salinas-Ibarra does not dispute the dangerousness of the situation that police confronted at his residence on March 7, 2015. The dispatcher reported to the responding officers that an incident involving weapons occurred in the middle of the night, involving a family member who was high on acid and trying to fight with family members with a baseball bat. Ellis Decl. ¶ 2. Mr. Salinas-Ibarra argues only that he was unlawfully detained because he did not meet the description of Johnathon Salinas. But the authority of police to detain individuals based on reasonable suspicion is not so narrow.

In light of the undisputed facts, it was constitutionally permissible for the officers to detain Mr. Salinas-Ibarra for a reasonable period of time in order to determine his connection to the events. *U.S. v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (holding that in order to make a valid investigatory detention, he or she needs only "a reasonable suspicion supported by articulable facts that criminal activity may be afoot."). The Court finds, as a matter of law, that Mr. Salinas-Ibarra's detention does not amount to a Fourth Amendment violation, which requires only "some minimal level of objective justification to validate the detention." *INS v. Delgado*, 466 U.S. 210, 217 (1984). It is irrelevant whether Mr. Salinas-Ibarra matched the dispatcher's description of the bat-wielding individual.[4] The responding officers arrived at the scene, and when Mr. Salinas-Ibarra came to the window, he refused Sergeant Green's request in Spanish to exit the residence. *See* Ellis Decl. ¶ 3. Based on this refusal, and because the police were still securing the premises to determine the exact nature of the incident, the police had reasonable suspicion to detain Mr. Salinas-Ibarra to determine his connection to the reported events. Even viewing the

---

[4] Although Mr. Salinas-Ibarra argues that he "was not the person the police were looking for," and "was not engaged in any criminal activity," he does not cite to *any* case authority to defeat summary judgment on this point. *See* Opp'n at 10.

14

1  evidence in the light most favorable to Mr. Salinas-Ibarra and drawing all inferences in his favor, a

2  rational trier of fact could not find that he was unlawfully detained, so there is no genuine issue of

3  fact for trial on the wrongful detention claim. *Id*.

4         For the foregoing reasons, Officer Ellis' motion for summary judgment on the unlawful

5  detention claim is GRANTED on several grounds: (1) Officer Ellis is immune from personal

6  liability based on her reasonable, good faith reliance on a facially valid direction from her fellow

7  officer to keep watch over Mr. Salinas-Ibarra who was already detained in handcuffs; (2) to the

8  extent Officer Ellis' reliance was unreasonable (and thus unconstitutional), the second prong of

9  qualified immunity applies because at the time of her conduct, the law did not clearly establish

10  that her conduct was unconstitutional; and (3) the undisputed facts show that the Mr. Salinas-

11  Ibarra's detention was based on reasonable suspicion and no reasonable jury could find otherwise.

12                 **2.     Wrongful Arrest**

13         The Court next turns to Officer Ellis' motion for summary judgment on the wrongful arrest

14  claim. A claim for unlawful arrest may arise under § 1983, "provided the arrest was without

15  probable cause or other justification." *Dubner v. Cnty. of San Francisco*, 266 F.3d 959, 964 (9th

16  Cir. 2001). "Probable cause exists when the facts and circumstances within the officer's

17  knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been

18  committed." *Lassiter v. City of Bremerton,* 556 F.3d 1049, 1053 (9th Cir. 2009). "The

19  determination whether there was probable cause is based upon the information the officer had at

20  the time of making the arrest. It is essential to avoid hindsight analysis, *i.e.*, to consider additional

21  facts that became known only after the arrest was made." *John v. City of El Monte*, 515 F.3d 936,

22  940 (9th Cir. 2008) (citations omitted). Moreover, probable cause does not require evidence of

23  each element of the offense that would be needed to support a conviction. *Adams v. Williams*, 407

24  U.S. 143, 149 (1972).

25         Officer Ellis argues that it is undisputed that she had probable cause to arrest Mr. Salinas-

26  Ibarra for a violation of California Penal Code § 148 when he refused her repeated commands to

27  stay seated. Section 148(a)(1) criminalizes "willfully resisting, delaying, or obstructing a peace

28  officer" in the lawful performance of his or her duties. *See Smith v. City of Hemet*, 394 F.3d 689,

693 (9th Cir. 2005); Cal. Penal Code § 148 (West). According to Officer Ellis, she had probable cause to arrest Mr. Salinas-Ibarra for refusing to comply with her repeated orders to be quiet and stay seated. Mot. at 8. She also points to evidence that Mr. Salinas-Ibarra resisted arrest by tensing his body and refusing to move backward to the curb and sit down. Ellis Decl. ¶ 8. However, in determining whether qualified immunity applies on summary judgment, the Court must consider the facts in the light most favorable to Mr. Salinas-Ibarra—who disputes Officer Ellis' account of events.

Mr. Salinas-Ibarra provided an account of events in his deposition testimony as follows: He testified that he never stood up after being seated on the curb for the first time, in part because his foot was injured when Officer Ellis crushed his foot when he was initially brought to a seated position. Salinas-Ibarra Depo. 43:11-21. Mr. Salinas-Ibarra testified that Officer Ellis "smashed" his foot on her own, but he did not see it happen because it happened behind his back. *Id.* 46:11-17. Once his foot was crushed and he was seated on the curb, he testified that he never stood up or moved forward—only that he tried to stand up at one point to see what was going on with Johnathon, but he could not stand due to his foot injury. *Id.* 49:15-25; 50:1-2.[5] As Mr. Salinas-Ibarra testified, the incident with his foot being crushed had already happened by the time Johnathon exited the residence. *Id.* 48:17-20. When Mr. Salinas-Ibarra tried but failed to stand up, he testified that the officers put their hand on his neck and "applied a lot of pressure." *Id.* 50:14-16. According to Mr. Salinas-Ibarra, he did not try to move toward his wife or family members, and he did not try to communicate with Johnathon. *Id.* 60:3-22. Mr. Salinas-Ibarra further testified that Officer Ellis did not give him any instructions to sit down in Spanish, and he did not understand her instructions. *Id.* 37:1-4, 11-25. Accordingly, Mr. Salinas-Ibarra does not believe that he resisted arrest. *Id.* 77:18-21.

The first step of the qualified immunity analysis requires the Court to ask whether, taking

---

[5] Because Mr. Salinas-Ibarra's version of events does not include Officer Ellis' use of a "leg sweep," it appears that he disputes the leg sweep. Instead, he says Officer Ellis stomped on his foot, although he could not see it because it was behind him. Salinas-Ibarra Depo. 46:11-17. It is not clear whether the "stomp" occurred during the initial sit down or at some point after, but Mr. Salinas-Ibarra is clear that it occurred before Johnathon exited the residence. *Id.* 48:17-20.

the facts "in the light most favorable to the party asserting the injury," the facts alleged show that "the officer's conduct violated a constitutional right." *See Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The Court finds that several genuine disputes of material fact exist regarding the events that led up to Mr. Salinas-Ibarra's arrest for a violation of § 148. Based on Mr. Salinas-Ibarra's version of events describing himself as compliant at all times, the Court cannot conclude that a prudent person under the totality of circumstances would believe that Mr. Salinas-Ibarra was willfully resisting, delaying, or obstructing legitimate law enforcement activities. Thus, the totality of the circumstances viewed in the light most favorable to Mr. Salinas-Ibarra do not support a finding on summary judgment that Officer Ellis had probable cause to arrest him for a violation of section 148(a)(1).

Because the facts according to Mr. Salinas-Ibarra show that a constitutional violation occurred when Mr. Salinas-Ibarra was arrested, the Court must turn to the second prong of qualified immunity to determine if, at the time of the arrest, Officer Ellis' conduct violated a clearly established right. *Millender*, 564 F.3d at 1148 ("If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'") (quoting *Saucier*, 533 U.S. at 201). Ultimately, the Court finds that the question of qualified immunity is premature in light of the disputed material facts that can only be resolved by a jury.

As explained above, Officer Ellis has presented evidence that Mr. Salinas-Ibarra refused multiple orders that she gave to him in Spanish to remain seated and quiet, and for tensing his body and resisting arrest when she tried to move him back to the curb after he stood up and began moving forward. Ellis Decl. ¶¶ 5, 7-8. Under the second prong of qualified immunity, Officer Ellis argues that it was not plainly incompetent for her to believe she was justified to arrest Mr. Salinas-Ibarra under Penal Code § 148 when he refused her commands and resisted her efforts to keep him seated. Mot at 8. Yet Mr. Salinas-Ibarra disputes every aspect of Officer Ellis' testimony in this regard, stating that he was fully compliant with the exception of one unsuccessful attempt to get up when Johnathon exited the residence. Salinas-Ibarra Depo. 49:15-25; 50:1-2. In her reply, Officer Ellis attempts to argue that even under Mr. Salinas-Ibarra's version of the facts

he violated § 148(a)(1) by attempting to get up from a seated position when Johnathon Salinas exited the residence, because he had been placed into a seated position and he knew that the officers wanted him to remain seated. Salinas-Ibarra Depo. 49:15-21.

The Court cannot conclude, based on Mr. Salinas-Ibarra's version of the facts, that a single and unsuccessful attempt to stand up when he did not understand any of the officer's instructions—constitutes probable cause to arrest him for violating California Penal Code § 148(a), which applies when a person "willfully resists, delays, or obstructs any…peace officer…in the discharge or attempt to discharge any duty of his or her office or employment." Cal.Penal Code § 148(a)(1). According to Mr. Salinas-Ibarra, he did not do anything that would have satisfied Officer Ellis' articulated reasons for arresting him. Namely, Officer Ellis testified that she was concerned that Mr. Salinas-Ibarra would attempt to communicate with Johnathon (Mr. Salinas-Ibarra testified that he did not attempt to do so), concerned that he had not complied with her multiple orders to remained seated and quiet (Mr. Salinas-Ibarra testified that he always remained seated and compliant); and concerned that he may try to confront one of the other officers (Mr. Salinas-Ibarra testified that he did not stand up or move forward because his foot was injured). *See* Ellis Decl. ¶ 7.

The Court notes an important discrepancy between Mr. Salinas-Ibarra's deposition testimony and the operative complaint in this action, as well as arguments presented in the opposition brief. The Amended Complaint alleges that "[w]hile the Officers were attempting to detain Plaintiff's son, Plaintiff was yelling at his son to comply," and explains that Officer Ellis used excessive force against Plaintiff as he "continued to advise his son to calm down." Amended Compl. ¶¶ 22, 24. In contrast, Mr. Salinas-Ibarra testified that he did *not* try to yell anything to Johnathon when he came outside the residence. Salinas-Ibarra Depo. 60:10-16. Then, the opposition brief appears to concede that Mr. Salinas-Ibarra *did* yell toward his son. *See* Opp'n at 18 ("The fact that Mr. Salinas-Ibarra yelled at his son to calm down during this incident does not rise to probable cause to arrest."); Opp'n at 13 "[Y]elling to his son to calm down could hardly be perceived as a threat that would require the use of force by Officer Ellis."). Similarly, at the summary judgment hearing, counsel did not dispute that Mr. Salinas-Ibarra attempted to

18

1    communicate with Johnathon. Nevertheless, the Court cannot ignore the clear testimony from Mr.

2    Salinas-Ibarra's deposition that raises a genuine dispute of material fact on the wrongful arrest

3    claim. *City of Pomona*, 750 F.3d at 1049. The Court cannot conclude that "no reasonable jury"

4    could credit Mr. Salinas-Ibarra's testimony and find that he was arrested without probable cause.

5          Binding Ninth Circuit authority is clear that it would be inappropriate for the Court to draw

6    upon Officer Ellis' version of events to resolve these factual disputes on a motion for summary

7    judgment based on qualified immunity. *Bonivert v. City of Clarkston*, 883 F.3d 865, 881 (9th Cir.

8    2018) (finding that "in weighing the evidence in favor of the officers, rather than [the plaintiff],

9    the district court unfairly tipped that inquiry in the officers' favor," and concluding that genuine

10   issues of fact "prevent a determination of qualified immunity at summary judgment [such] that the

11   case must proceed to trial.") (citing *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.

12   1993)); *see also Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) ("In

13   this case, the district court properly denied the summary judgment motion because there are

14   genuine issues of fact regarding whether the officers violated [plaintiff's] Fourth Amendment

15   rights. Those unresolved issues of fact are also material to a proper determination of the

16   reasonableness of the officers' belief in the legality of their actions.") (citing *Santos v. Gates,* 287

17   F.3d 846, 855 n. 12 (9th Cir. 2002)). Officer Ellis does not testify that a single attempt to get up

18   off the curb and some yelling would have amounted to probable cause. Rather, she based her

19   probable cause determination on Mr. Salinas-Ibarra's "multiple" attempts to stand up in violation

20   of her orders to sit down—which he disputes. *See* Ellis Decl. ¶¶ 5, 7.

21         As the Ninth Circuit explained in *Act Up!/Portland v. Bagley*, "[i]f a genuine issue of fact

22   exists preventing a determination of qualified immunity at summary judgment, the case must

23   proceed to trial." 988 F.2d at 873. "Where a Fourth Amendment violation is claimed, the factual

24   issues that may preclude a determination of qualified immunity on summary judgment fall into

25   two categories." *Id.* First, the Ninth Circuit explained, "a determination of reasonable suspicion or

26   probable cause requires an inquiry as to the facts and circumstances within an officer's

27   knowledge…[t]hese are matters of fact to be determined, where genuine disputes of a material

28   nature exist, by the fact finder." *Id.*

Second, and as relevant here, "the determination of what conduct underlies the alleged violation—*what the officer and claimant did or failed to do*—is a determination of fact. *Id.* (emphasis added). Although the Court could determine as a matter of law whether undisputed facts support an objective belief that probable cause existed, it cannot resolve two competing and entirely inconsistent sets of facts at this stage. *Id.* at 873-74 ("If the court finds that a genuine issue of underlying fact does exist, it should postpone the qualified immunity determination until the facts have been developed at trial.") The facts underlying whether Officer Ellis is entitled to qualified immunity for arresting Mr. Salinas-Ibarra must be resolved by the jury at trial.[6]

In addition to her qualified immunity arguments, Officer Ellis argues that Mr. Salinas-Ibarra's wrongful arrest claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a § 1983 claim which necessarily calls into question the lawfulness of a plaintiff's criminal conviction or sentence is not cognizable unless the plaintiff can show that the conviction or sentence has been reversed or otherwise invalidated. *Id.* at 486-87. *Heck* explained that "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Id.* (*see also Smithart v. Towery,* 79 F.3d 951, 952 (9th Cir. 1996). Accordingly, the relevant question is whether success in a subsequent § 1983 suit would "necessarily imply" or "demonstrate" the invalidity of the earlier conviction or sentence under § 148(a)(1). *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (*Heck,* 512 U.S. at 487). The rule announced in *Heck* has become known as the "favorable termination" requirement. *Osborne v. Dist. Attorney's Office for Third Judicial Dist.*, 423 F.3d 1050, 1053 (9th Cir. 2005).

The parties agree that *Heck* would bar Mr. Salinas-Ibarra's unlawful arrest claim had he been convicted or sentenced. However, the undisputed facts show that the misdemeanor criminal complaint filed against Mr. Salinas-Ibarra was *dismissed*, and the criminal proceedings never resulted in a "conviction." *See* RJN Exh. B. Officer Ellis argues that the "dismissal" rather than

---

[6] At the hearing on Officer Ellis' motion, the Court indicated that it was inclined to grant summary judgment on the wrongful arrest claim. Upon further review of the briefing and factual record, however, the Court finds that it would be improper to grant the motion as to the wrongful arrest claim in light of the disputed facts underlying the qualified immunity analysis.

"conviction" issue is a technicality, and it is clear from the record that the dismissal of the charges was predicated on Mr. Salinas-Ibarra completing twenty (20) hours of community service. Mot. at 9. Officer Ellis cites to a single district court decision from the Middle District of Pennsylvania to support her position that this Court should extend *Heck* to a dismissal of criminal charges—rather than a conviction. *See Taylor v. JFC Staffing Associates*, 690 F.Supp.2d 357 (M.D. Penn. 2009).

In *Taylor*, the court granted summary judgment in favor of the defendant on the plaintiff's retaliation claim under *Heck* because the plaintiff had agreed to perform community service in exchange for having his arrest expunged. 690 F. Supp. 2d at 376. The court interpreted binding Third Circuit precedent from *Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005), in finding that the plaintiff's "agreement to perform community service in exchange for expungement placed burdens upon him that were 'not consistent with innocence,' and is unlike the exceptions announced in *Heck* that would permit a § 1983 claim to proceed." *Taylor v. JFC Staffing Assocs.*, 690 F. Supp. 2d at 376.[7] Officer Ellis urges the Court to apply *Taylor* and *Gilles* to find that the dismissal of Mr. Salinas-Ibarra's Penal Code § 148 charges in exchange for performing 20 hours of community service, means that *Heck* bars his unlawful arrest claim. Mot. at 9.

The Court does not find Officer Ellis' out of circuit precedent persuasive, and declines to extend *Heck* to the facts of this case. The District Attorney dismissed the misdemeanor charge against Mr. Salinas-Ibarra. Without a conviction in any sense of the word, *Heck* does not apply and Mr. Salinas-Ibarra's § 1983 claim for wrongful arrest may proceed.

Because *Heck* does not apply and the material facts underlying Officer Ellis' assertion of qualified immunity—namely that Mr. Salinas-Ibarra refused her commands to stay seated by getting up from the curb multiple times, moving forward, and yelling at Johnathon Salinas—are

---

[7] The Court cannot find a single decision from the Ninth Circuit Court of Appeals or the Northern District of California that cites to either *Gilles* or *Taylor*. Indeed, *Taylor* has never been applied outside of Pennsylvania. The only case from the Southern District of California to discuss a related issue actually adopted a strict reading of *Heck* and distinguished *Gilles* in order to concluded that *Heck* did not bar the plaintiff's § 1983 claims. *Magana v. Cty. of San Diego*, 835 F. Supp. 2d 906, 913 (S.D. Cal. 2011) (holding that *Heck* does not apply because the plaintiff "was never convicted of anything or sentenced by the juvenile court," "never pleaded guilty to the criminal charges leveled against him," and "upon his successful completion of the informal supervision, those charges were dismissed in their entirety.")

United States District Court
Northern District of California

United States District Court
Northern District of California

1    disputed, summary judgment on the wrongful arrest claim must be DENIED WITHOUT

2    PREJUDICE at this stage.

3    **B.      Excessive Force**

4            In his second claim for relief, Mr. Salinas-Ibarra alleges that Officer Ellis used excessive

5    force against him in violation of the Fourth Amendment when she kicked him in the legs and

6    knocked him to the ground.  Amended Compl. ¶¶ 41-44.[8]  Officer Ellis asserts qualified immunity

7    based on what she describes as "minimal force" used to return Mr. Salinas-Ibarra to a seated

8    position on the curb.  Mot. at 9.  As with the unlawful arrest analysis, Officer Ellis again relies on

9    her own version of events and ignores the requirement that this Court view the evidence in the

10   light most favorable to Mr. Salinas-Ibarra even when determining whether qualified immunity

11   applies. *Saucier,* 533 U.S. at 201.  The Court is required to accept Mr. Salinas-Ibarra at his word at

12   the summary judgment stage.  *See Thompson v. Rahr*, No. 16-35301, 2018 WL 1277400, at *3

13   (9th Cir. Mar. 13, 2018).

14           Because the excessive force inquiry is legally distinct from the wrongful arrest analysis

15   conducted above, the Court separately considers whether Officer Ellis is entitled to qualified

16   immunity on the excessive force claim.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477

17   (9th Cir. 2007) ("Because the excessive force and false arrest factual inquiries are distinct,

18   establishing a lack of probable cause to make an arrest does not establish an excessive force claim,

19   and vice-versa.").  Resolving all factual disputes in favor of Mr. Salinas-Ibarra, the Court

20   concludes that every reasonable officer in Officer Ellis' position would have known that she was

21   violating the constitution by stomping on Mr. Salinas-Ibarra's foot when he was already

22   handcuffed and cooperating with instructions to sit down.  The Court acknowledges that the

23   qualified immunity analysis would be much different if the Court were to credit Officer Ellis'

24   account, but the disputed facts in the record prevent a finding of qualified immunity.  Accordingly,

25   _____

26   [8] As explained above, Mr. Salinas-Ibarra's deposition testimony is not consistent with the
     allegations in the Amended Complaint.  He testified that his foot injury happened before

27   Johnathon left the residence, and not, as alleged, while he was advising Johnathon to calm down.
     *Compare* Salinas-Ibarra Dep. 48:17-20 with Amended Compl. ¶ 24.  Nevertheless, the Court

28   draws all reasonable inferences from Mr. Salinas-Ibarra's testimony on summary judgment,
     including his timeline regarding Officer Ellis' use of force. *City of Pomona*, 750 F.3d at 1049.

Officer Ellis' motion for summary judgment on the excessive force claim is DENIED.

As explained above, a government official sued under § 1983 is entitled to qualified immunity unless the plaintiff shows that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014) (citing *Ashcroft v. al–Kidd*, 131 S.Ct. 2074, 2080 (2011)). Because Mr. Salinas-Ibarra must succeed on both prongs, the Court addresses each in turn. *See Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012). However, where factual disputes exist, summary judgment on the issue of qualified immunity is appropriate only if Officer Ellis is entitled to qualified immunity on the facts as alleged by the non-moving party. *Blankenhorn v. City of Orange*, 485 F.3d 463, 477–78 (9th Cir. 2007); *see also Liston v. Cty. of Riverside*, 120 F.3d 965, 977 (9th Cir. 1997) ("For the purposes of summary judgment, even in a qualified immunity case, we must assume the nonmoving party's version of the facts to be correct.") Thus, the Court views the disputed facts in Mr. Salinas-Ibarra's favor in determining whether Officer Ellis is entitled to qualified immunity.

### 1. Constitutional Violation

Under the first prong of qualified immunity at summary judgment, Officer Ellis must show that no rational trier of fact could find that her use of force violated Mr. Salinas-Ibarra's Fourth Amendment rights to be free from unreasonable searches and seizures. If the evidence viewed in the light most favorable to Mr. Salinas-Ibarra could lead a reasonable jury to find that Officer Ellis used excessive force, then she is not entitled to summary judgment on the excessive force claim. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc). The Fourth Amendment "guarantees citizens the right to be secure in their persons . . . against unreasonable . . . seizures of the person." *Graham v. Connor,* 490 U.S. 386, 394 (1989) (internal quotation marks omitted) (alteration in original). "[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395; *see also City of Hemet*, 394 F.3d at 700–01.

The "reasonableness" of a particular seizure depends on how it was carried out. *Graham*,

490 U.S. at 395. The "objective reasonableness" of an officer's use of force in a particular case is determined "in light of the facts and circumstances confronting [her], without regard to [her] underlying intent or motivation." *Id.* at 396–97. In *Graham*, the Supreme Court set forth a non-exhaustive list of factors to be considered in evaluating whether the force used to effect a particular seizure is reasonable, including (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to evade arrest by flight. *Id.* at 396; *see also Liston v. Cty. of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997), *as amended* (Oct. 9, 1997). "Because this inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotations omitted); *see also Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) ("summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly").

Moreover, the Supreme Court in *Graham* explained that evaluating an excessive force claim "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." 490 U.S. at 396 (internal quotation marks and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (internal quotation marks and citation omitted).

The Ninth Circuit has articulated a three-step approach to *Graham* balancing. *See Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011). First, the court "must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Id.* (internal quotation marks and citation omitted). Second, the court must "evaluate the government's interest in the use of force." *Id.* Finally, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Id.*

(internal quotation marks and citation omitted); *see also Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) ("This standard requires us to balance the amount of force applied against the need for that force.").

Despite the *Graham* factors and the approach laid out in *Glenn*, the Court must keep in mind that "there are no per se rules in the Fourth Amendment excessive force context; rather, courts must still slosh their way through the factbound morass of 'reasonableness.'" *See Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 383 (2007)). The Court notes that in their briefing, neither party appropriately presents their argument under the *Glenn* framework. Nonetheless, the Court uses the Ninth Circuit's approach to *Graham* balancing in order to "balance the amount of force applied against the need for that force." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010); *Meredith v. Erath,* 342 F.3d at 1061.

### i.    Nature and Quality of the Intrusion

First, as to the severity of the intrusion on Mr. Salinas-Ibarra's Fourth Amendment rights, Mr. Salinas-Ibarra testified that Officer Ellis "smashed" his foot. Salinas-Ibarra Depo. 46:3-21. The Court considers this to be an intermediate use of force because it was capable of inflicting significant pain and causing serious injury—indeed it is undisputed that the maneuver resulted in a broken bone. The Ninth Circuit has recognized that "[t]he police arsenal includes many different types of force, which intrude upon the Fourth Amendment rights of the individual to varying degrees." *Nelson v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012). Moreover, "physical blows or cuts often constitute a more substantial application of force than categories of force that do not involve a physical impact to the body." *Id*. (internal quotations and citation omitted).

Although Officer Ellis describes her physical maneuver to get Mr. Salinas-Ibarra into a seated position differently, the Court must accept Mr. Salinas-Ibarra's testimony for the purposes of summary judgment on the excessive force claim. It is undisputed that Officer Ellis used physical force to get Mr. Salinas-Ibarra to sit down. However, "[n]either tackling nor punching a suspect to make an arrest necessarily constitutes excessive force." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). "Not every push or shove, even if it may seem unnecessary in the peace of the judge's chambers, ... violates the Fourth Amendment". *Graham*, 490 U.S. at 396

(internal quotations and citation omitted).

Indeed, officers have been granted qualified immunity for "leg sweep" takedowns of an arrestee in certain circumstances, such as when the arrestee refused commands to get down. *Huber v. Coulter*, No. CV 12-3293-GHK (JEM), 2015 WL 13173223, at *12 (C.D. Cal. Feb. 10, 2015), *aff'd*, 684 F. App'x 623 (9th Cir. 2017). However, the Court in *Huber* also noted that "the floor was carpeted and plaintiff suffered no injuries other than bruises," demonstrating that the *Graham* inquiry is fact intensive. The *Huber* court ultimately granted the defendants' summary judgment motion based on qualified immunity under the second "clearly established" prong, but with respect to the first prong it unequivocally held that "[t]he objective reasonableness of performing a leg sweep or similar takedown maneuver against an unresisting or minimally resisting individual is a fact-specific issue that often cannot be resolved on summary judgment." 2015 WL 13173223, at *13 (C.D. Cal. Feb. 10, 2015).

In determining whether Officer Ellis' "kick" or "leg sweep" was reasonable in this case, the Court must next consider the amount of physical force used in light of the governmental interests at stake.

### ii. Governmental Interest in Use of Force

Under *Graham v. Connor*, the Court evaluates the government's interest in the use of force by examining three core factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. 490 U.S. at 396; *see also Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001); *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). These factors are not exclusive and are "simply a means by which to determine objectively 'the amount of force that is necessary in a particular situation.'" *Deorle*, 272 F.3d at 1280 (quoting *Graham*, 490 U.S. at 396-97).

In other words, the Court examines the totality of the circumstances and considers "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Franklin v. Foxworth,* 31 F.3d 873, 876 (9th Cir.1994). For example, in some cases the Court may find it necessary to consider the availability of alternative methods of capturing or

subduing a suspect. *See City of Hemet*, 394 F.3d at 701. Although officers need not employ the least intrusive degree of force possible, they must consider less intrusive methods of effecting an arrest, and the presence of feasible alternatives factors into the *Graham* analysis. *Bryan*, 630 F.3d at 831 n.15.

Here, under the totality of the circumstances and viewing the evidence in the light most favorable to Salinas-Ibarra, the evidence suggests that Officer Ellis' use of force against him was not justified under the circumstances. As to the first factor, Mr. Salinas-Ibarra testified that he committed no crime and did not resist arrest, nor did he match the description of Johnathon Salinas—the individual who was reported to be threatening family members with a baseball bat. Officer Ellis testified that Mr. Salinas-Ibarra was arrested for resisting, delaying, and not complying with multiple orders to be seated on the curb. Ellis Decl. ¶ 10. Thus, the severity of the crime does not weigh heavily in the Court's analysis.

The "most important" factor in considering the governmental interest in the use of force under *Graham* is whether the suspect posed an "immediate threat to the safety of the officers or others." *City of Hemet,* 394 F.3d at 702 (quoting *Chew v. Gates,* 27 F.3d 1432, 1441 (9th Cir. 1994)). "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle,* 272 F.3d at 1281. The Court cannot accept Officer Ellis' version of events and her testimony that Mr. Salinas-Ibarra was standing up repeatedly, moving forward and yelling at Johnathon, interfering with legitimate law enforcement objectives. Rather, Mr. Salinas-Ibarra testified that the foot injury occurred *before* Johnathon even came outside, and that Mr. Salinas-Ibarra remained on the ground after that. A reasonable jury could credit Mr. Salinas-Ibarra's version of the facts and find based on these facts that Mr. Salinas-Ibarra did not pose an immediate threat to the safety of the officers or to anyone else at the time of his arrest.

The third consideration under *Graham*'s governmental interest factor is whether the suspect was actively resisting arrest or attempting to evade arrest by flight. 490 U.S. at 396. Mr. Salinas-Ibarra did not attempt to flee, however it is disputed whether he resisted because he disputes that he ever stood up again after he was initially seated. The conflicting factual scenarios

27

1  presented by Mr. Salinas-Ibarra and Officer Ellis make clear that whether Mr. Salinas-Ibarra was

2  resisting or refusing to comply with Officer Ellis' commands to sit down is a question for the jury.

3                    **iii.      Balancing Competing Interests**

4          Ultimately, under *Graham*'s "core factors," when the evidence is viewed in the light most

5  favorable to Mr. Salinas-Ibarra, a reasonable jury could find that Officer Ellis' use of force was

6  unreasonable.  The Court has also considered whether less intrusive options were available to

7  Officer Ellis at the time of the incident. *See Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1165-66

8  (9th Cir. 2011).  In *Young*, the Ninth Circuit held that "it is rarely necessary, if ever, for a police

9  officer to employ substantial force without warning against an individual who is suspected only of

10  minor offenses, is not resisting arrest, and, most important, does not pose any apparent threat to

11  officer of public safety." *Id*. at 1167-68.  The Ninth Circuit took into account that less intrusive

12  options were available to the officer: for example, the officer could have given the suspect a

13  warning that disobedience would lead to the use of force against him, or could have "simply begun

14  to effect [the plaintiff]'s arrest by attempting to handcuff him." *Id*. at 1165-66.  Officer Ellis

15  concedes that she did not warn Mr. Salinas-Ibarra before using force against him. Ellis Depo.

16  34:10-11; *see Deorle*, 272 F.3d at 1284 ("[W]arnings should be given, when feasible, if the use of

17  force may result in serious injury, and…the giving of a warning or the failure to do so is a factor to

18  be considered in applying the *Graham* balancing test.")

19          The Court recognizes that dangerous circumstances such as those presented here require

20  police officers to make "split second" judgments.  *See Graham*, 490 U.S. at 397 (finding that

21  police officers must act "in circumstances that are tense, uncertain, and rapidly evolving.")

22  However, it is disputed whether Mr. Salinas-Ibarra posed a threat to the officers, interfered with

23  the officers' interactions with Johnathon, complied with instructions to remain seated, or resisted

24  arrest.  Consequently, when all of the facts are construed in favor of Mr. Salinas-Ibarra, Officer

25  Ellis has not demonstrated that her use of force was objectively reasonable as a matter of law.

26  Accordingly, she is not entitled to qualified immunity under the first prong.

27

28

## 2. Clearly Established

Because the Court finds that there is a triable question of fact regarding whether a constitutional violation occurred, the Court next determine whether Officer Ellis violated a clearly established right at the time of her conduct on March 7, 2015. The Court concludes that, resolving factual disputes in Mr. Salinas-Ibarra's favor, it was clearly established that using a leg sweep, stomp, or kick to take down a non-resisting and compliant individual without warning, resulting in a broken foot, was unconstitutional. *See Blankenhorn*, 485 F.3d at 481 ("In assessing the state of the law at the time of Blankenhorn's arrest, we need look no further than *Graham*'s holding that force is only justified when there is a need for force."). A reasonable officer would have known that such conduct violated the Fourth Amendment. *See, e.g.*, *McCaig v. Raber*, 515 F. App'x 551, 556 (6th Cir. 2013) ("Because it was clearly established that the use of force on a non-resistant or passively-resistant individual may constitute excessive force, and because a reasonable jury could find that [the plaintiff] posed little or no threat based on the facts alleged, the district court did not err in denying [defendant officer's] motion for summary judgment based on qualified immunity.")

The Supreme Court has repeatedly admonished courts to consider clearly established constitutional violations as it relates to the particular circumstances of the case, and must avoid defining it "at a high level of generality." *See White v. Pauly*, 137 S.Ct. 548, 551-52 (2017). Further, the Ninth Circuit has recently emphasized that the plaintiff has the burden under the second prong of qualified immunity to point to case law indicating that the right allegedly violated was clearly established. "Except in the rare case of an 'obvious' instance of constitutional misconduct…Plaintiffs must *identify a case* where an officer acting under similar circumstances as [Officer Ellis] was held to have violated the Fourth Amendment." *Sharp v. County of Orange*, No. 15-56146, 2017 WL 4126947, at *7 (9th Cir. Sept. 19, 2017) (emphasis in original) (quoting *White v. Pauly*, 137 S.Ct. at 552). The preexisting law identified must also be "controlling—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a consensus of courts outside the relevant jurisdiction." *Id*. (internal citation and quotation omitted).

Mr. Salinas-Ibarra points to *Young v. Cty. of Los Angeles* to demonstrate that it was clearly established on March 7, 2015, that an officer may not "use significant force against a suspect who

was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest." 655 F.3d 1156, 1168 (9th Cir. 2011); *see* Opp'n at 16. In *Young*, a deputy pulled Young over for driving with an unfastened seatbelt, and Young refused to stay in his truck as instructed. 655 F.3d at 1159. Without warning, the deputy approached Young from behind while he was sitting on a sidewalk curb and pepper sprayed him. *Id.* When Young got up to back away from the spray, the deputy struck him numerous times with a baton, and struck him again even after he was on the ground in handcuffs. *Id.* at 1160. The Ninth Circuit reversed the district court's grant of summary judgment on the issue of qualified immunity because well-established law put reasonable officers on "explicit and unambiguous notice" that the use of intermediate force would constitute an excessive response to a suspect's misdemeanor and disobedience of a police order. *Id.* at 1168 (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 468, 479 (9th Cir. 2007).

Although the facts differ somewhat from those presented here, *Young* and *Blankenhorn* clearly established as early as 2001 that it was unconstitutional for an officer to use significant force against individuals suspected of minor crimes, who were not resisting arrest, and posed no threat to officer safety. According to Mr. Salinas-Ibarra, he was a non-resisting misdemeanor suspect already in handcuffs who was kicked or stomped on without warning, resulting in a broken foot. The Court agrees that summary judgment under the second prong of qualified immunity is not appropriate at this stage.

Officer Ellis does not argue that she is entitled to qualified immunity under Mr. Salinas-Ibarra's set of facts. Rather, she argues that her "slight" use of force was necessitated only by Mr. Salinas-Ibarra's "own persistent refusal to remain in place," and there is no "clearly established law" forbidding her use of force under such circumstances. Mot. at 4. When confronted with Mr. Salinas-Ibarra's testimony that contradicts her own, she argues that his factual assertions "lack foundation" and call for medical opinion. Reply at 4. Again relying on *Huber*, Officer Ellis urges the Court to find that qualified immunity applies to the use of a leg sweep or a more modest degree of force to return an individual to a seated position on the curb. *Id.*

In *Huber*, the court found that the *Graham* standard is "cast at a high level of generality" and by itself clearly establishes a constitutional right only in an obvious case. *Huber v. Coulter*, No. CV 12-3293-GHK (JEM), 2015 WL 13173223, at *14 (C.D. Cal. Feb. 10, 2015), *aff'd*, 684 F. App'x 623 (9th Cir. 2017) (interpreting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004)). Under the factual scenario set forth by the plaintiff in *Huber*, the Court held that "it would not have been clear to a reasonable officer that a takedown of an unresisting arrestee with the level of force and under the circumstances present here would violate the Fourth Amendment." 2015 WL 13173223, at *14. The court noted that the plaintiff did not suffer any injuries beyond bruising, and further considered his prior physical resistance that distinguished *Huber* "from the usual case involving a non-resisting arrestee." *Id.* Mr. Salinas-Ibarra, on the other hand, describes himself as the quintessential non-resisting arrestee who was already detained in handcuffs and presents evidence that he suffered a broken foot from the incident. *See* Salinas-Ibarra Depo. 13:3-8; 43:11-13; 77:18-21.

The *Huber* court distinguished cases involving takedowns in which courts denied qualified immunity, in part because they involved more serious injuries to the plaintiff. *See, e.g.*, *McCaig*, 515 F. App'x at 555 (finding that the plaintiff's right to be free from excessive force involving a takedown maneuver that broke his wrist was clearly established because "cases in this circuit clearly establish the right of [persons] who pose no safety risk to the police to be free from gratuitous violence during arrest."); *See also Montoya v. City of Flandreau*, 669 F.3d 867, 873 (8th Cir. 2012) ("Assuming once again [plaintiff's] story is true, the contours of the right at issue were sufficiently clear to inform a reasonable officer in [the officer defendant's] position it was unlawful for him to perform a 'leg sweep' and throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee.") The Court finds that Mr. Salinas-Ibarra's version of events paints a similar picture to those circumstances presented in *McCaig* and *Montoya*, and is distinguishable from *Huber*.

Crediting Mr. Salinas-Ibarra's testimony, the constitutional question was "beyond debate" such that every reasonable officer on March 7, 2015, would have known that leg sweeping or

31

stomping on an already handcuffed and complying individual's foot without warning in order to get him to sit down violated his Fourth Amendment rights. *See al–Kidd*, 131 S. Ct. at 2083. Accordingly, Officer Ellis is not entitled to qualified immunity. *See Young*, 655 F.3d at 1167-68 (holding that "it is rarely necessary, if ever, for a police officer to employ substantial force without warning against an individual who is suspected only of minor offenses, is not resisting arrest, and, most important, does not pose any apparent threat to officer of public safety."). Officer Ellis' motion for summary judgment on the excessive force claim is DENIED.

## V.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Officer Ellis' Motion for Summary Judgment is:

> (1) GRANTED as to Mr. Salinas-Ibarra's claim for wrongful detention;
>
> (2) DENIED as to Mr. Salinas-Ibarra's claim for wrongful arrest;
>
> (3) DENIED as to Mr. Salinas-Ibarra's claim for excessive force.

Dated: March 27, 2018

BETH LABSON FREEMAN
United States District Judge